T.C. Summary Opinion 2008-23


UNITED STATES TAX COURT


JOSEPH P. AND MARY A. DYER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20860-06S.              Filed March 3, 2008.


Joseph P. Dyer, pro se.

Jeffrey S. Luechtefeld, for respondent.


RUWE, Judge:  This case was heard pursuant to the provisions of section 7463[1] of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

_____

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue.

Respondent determined a deficiency in petitioners' 2003 Federal income tax of $4,675. The only issue we must decide is whether petitioners received income of $18,171 as a result of the lapse of a life insurance policy.[2]

## Background

Some of the facts have been stipulated and are so found. The parties' oral stipulation of facts and exhibits is incorporated by this reference. When the petition was filed, petitioners resided in Florida.

Joseph Dyer (petitioner) was a partner in the law firm of Siciliano, Ellis, Sheridan, & Dyer (law firm or firm) in 1978. On May 12, 1978, the firm purchased a life insurance policy (insurance policy or policy) with petitioner as the insured and his wife, petitioner Mary Dyer, named as the beneficiary. The firm's partners, including petitioner, had an oral agreement to insure each of the partners so that, in case one of the partners died, the proceeds from the insurance covering that partner would

---

[2] In their petition, petitioners claim that respondent is barred by the statute of limitations from assessing a deficiency against them for 2003. In respondent's answer, he alleged that petitioners' 2003 Federal income tax return was filed on Oct. 14, 2004, and that the notice of deficiency was timely sent to petitioners by certified mail on July 10, 2006, before the expiration of the 3-year period for assessment applicable under sec. 6501(a). Petitioners did not argue this issue at trial. Accordingly, we find that petitioners conceded the issue, and respondent timely sent the notice of deficiency in accordance with the requirements of sec. 6501(a).

satisfy the partnership's obligation to his or her spouse for the deceased partner's share of the partnership.

Initially, the firm paid significant amounts of money to fund the policy's premiums. After 5 years, the firm stopped paying the premiums and, apparently, the premiums then were paid by borrowing from the cash value of the policy. The policy was issued by Northwestern Mutual Life Insurance Co. (the insurance company). The insurance policy remained in effect from 1978 until 2003. The insurance company never had any direct contact with petitioners. Petitioners never received any distribution of money from the policy, nor did they initiate any borrowing against the policy.

Petitioner retired from the firm in 2001, and the firm paid petitioner for his share of the partnership.

In a letter dated January 19, 2003, the insurance company informed the law firm that the policy on petitioner's life had lapsed. The letter was addressed to "Siciliano Ellis Sheridan & Dyer", the name of the law firm at the time the policy was purchased,[3] and stated in pertinent part:

---

[3] According to petitioner, the firm name was changed in 1980 when "Sheridan" withdrew from the firm to become a judge. Petitioner also noted that "Siciliano" died in 1985, "Ellis" retired from the firm in 1999, and petitioner retired in 2001.

Dear Policyowner:

We have not yet received the current premium for this policy and it no longer provides the protection you originally wanted.

The policy lapsed to $40,760 of insurance which will be in effect until MARCH 9, 2004.

When your policy lapsed, loan interest of $21,955.05 was repaid.

The policy lapse resulted in taxable income of $18,171.23 which we are required by law to report to the IRS. A 1099R form will be sent to you in January. We are also required to ask that you complete and return the enclosed Substitute W9 form to ensure the correct reporting of this income.

> However, you can apply to restore full protection and policy values and avoid the taxable income. To do so, you must take these easy steps:
>
> - Complete and sign the enclosed Request for Reinstatement.
> - Return the Request and your payment for the Amount Due before FEBRUARY 12, 2003.

We will do the rest. If the request is approved, you will continue to enjoy all the valuable benefits the policy was designed to provide.

We will not be sending you another reminder, so we urge you to mail the completed request and your payment today. If you have any questions, contact your Financial Representative shown below or your Service Representative in the Policyowner Services Department at the home office.

The firm did not apply to restore the policy and did not make any further premium payments to prevent the policy from lapsing.

Petitioners filed a joint Federal income tax return for 2003 without reporting income from the policy.  Petitioners never received a Form 1099-R, Distributions from Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., from the insurance company.

Apparently, the insurance company obtained petitioner Mary Dyer's Social Security number from the firm's bookkeeper, but it never contacted petitioners directly about the situation.  The insurance company notified the IRS that petitioner Mary Dyer was the recipient of the income referred to in its letter to the law firm dated January 19, 2003.  This resulted in an examination of petitioners' 2003 return.  In a letter addressed to petitioners dated May 3, 2006, respondent suggested that petitioners might qualify to use a Form 8606, Nondeductible IRAs, to show their cost basis in the "distribution" in question.  The letter also informed petitioners that respondent had contacted the insurance company, which verified that it paid income to petitioners.  In a letter dated May 29, 2006, petitioner described to respondent his version of the circumstances surrounding the purchase of the insurance policy.  In the letter, petitioner stated as follows:

> There has never been any distribution and the suggestion that we may qualify to use a Form 8606 to show our cost basis troubles me because that would apply to an annuity.  * * *  All the premiums were paid by the business and were a business deduction by the firm under the tax law at that time.  The purpose of the life insurance was solely to benefit the business. * * *  Northwestern [the insurance company] always

considered the firm to be the policyholder. (See Northwestern's ltr. of Jan. 19, 2003 when they declared the policy to have lapsed.) * * * Northwestern didn't even have our address or social security number and apparently called the firm in 2003 to get my wife's social security number. * * *

On July 10, 2006, respondent issued a notice of deficiency to petitioners for their 2003 tax year. Under a section in the notice titled "Reasons for the Changes", respondent stated in pertinent part:

These paragraphs explain the items listed in Section 1. Information Reported to IRS. * * *

RETIREMENT DISTRIBUTIONS

We need more information for the distribution shown on this notice. We need to know if the income is a pension or an annuity, an IRA or lump sum rollover, or an employee savings plan. If the income is from a pension/annuity or an Employee Savings Plan and you are recovering your contributions using the General Rule or the Simplified General Rule, please send us a signed statement with the date of your first pension payment, the amount you receive monthly, and the total amount you contribute. If the income is an IRA or lump sum and was rolled over, please send us a signed statement with the amount of the rollover, the date of the distribution and the date of the rollover. If the income is an employee savings plan, please send us a copy of the document showing the total distribution amount you received for 2003, and the nontaxable amount of the distribution.

In a letter sent to the insurance company dated May 22, 2007, respondent requested information relating to the alleged income and stated as follows:

INFORMATION NEEDED

Our records show that you issued a Form 1099-R to the Social Security Number (SSN) * * * for the tax year ending December 31, 2003 to Mary Dyer in the amount of $ 18,171.  Can you please verify the correctness of this amount?  Can you please provide a copy of the check issued to Mary Dyer for this amount?  This pertains to Policy Number * * * [the policy at issue].

In another letter to petitioners dated May 23, 2007, respondent stated as follows:

Dear Mr. and Mrs. Dyer

    We have been notified that the United States Tax Court has docketed this case.  It is to our mutual benefit to settle the case without a trial.  This pertains to the tax year ending December 31, 2003.  This case is scheduled for trial in Tampa, Florida on October 1, 2007.

    The Statutory Notice of Deficiency (SND) dated July 10, 2006 proposed an increase to taxable income for the failure to report the following income on your tax return:

    Taxable annuity income issued in the Social Security Number (SSN) of Mrs. Dyer from the Northwestern Mutual Life Insurance Company in the amount of $ 18,171.  * * *

    Information received from Northwestern Mutual Life Insurance Company regarding Policy Number * * * indicates this policy lapsed and the taxable amount was $ 18,171.23.  I have enclosed a copy of this information.  Per Internal Revenue Code Section 72, if a loan is still outstanding when the life insurance policy is surrendered or allowed to lapse, the borrowed amount becomes taxable at the time to the extent the loan value exceeds the owner's basis in the contract, as if the borrowed amount was actually received at the time of surrender or lapse and used to pay off the loan.  * * *  Please secure a corrected written statement from them that would verify the corrected taxable income regarding this policy for tax year 2003.

The remaining items proposed in the SND was [sic] a computational change to your Schedule A limitation. The determination of this issue will depend on the final resolution of the annuity income issue.

## Discussion

Respondent's position is based on his receipt of a Form 1099-R from the insurance company. That Form 1099-R is not in evidence. After some confusion, respondent now relies solely on a theory that petitioners' "income" is a result of policy loans made by petitioner Mary Dyer as owner of the policy that were satisfied when the insurance policy lapsed. Respondent's pretrial memorandum cites Atwood v. Commissioner, T.C. Memo. 1999-61. Atwood involved taxpayers who had borrowed against the cash value of the insurance policies that they owned.

The crux of petitioners' argument is that they were never the owners of the insurance policy, that they received no loans to pay policy premiums, that they never received any payments from the insurance company, and that they, therefore, never received any income. Petitioners support this argument by pointing out that petitioner's former law firm paid all the premiums and purchased the policy solely for the purpose of paying a surviving spouse for a deceased partner's share in the firm. This is corroborated by the letter from the insurance company addressed to the law firm dated January 13, 2003, which refers to the law firm as the "policyowner" of the policy and

indicates that any income from the policy's lapse would be the firm's income and that a Form 1099-R would be sent to the firm.

Section 6201(d) provides as follows:

> SEC. 6201(d). Required Reasonable Verification of Information Returns.--In any court proceeding, if a taxpayer asserts a reasonable dispute with respect to any item of income reported on an information return filed with the Secretary under subpart B or C of part III of subchapter A of chapter 61 by a third party and the taxpayer has fully cooperated with the Secretary (including providing, within a reasonable period of time, access to and inspection of all witnesses, information, and documents within the control of the taxpayer as reasonably requested by the Secretary), the Secretary shall have the burden of producing reasonable and probative information concerning such deficiency in addition to such information return.

Petitioners have asserted a reasonable dispute to the item of income reported to the IRS on the information return and cooperated fully with respondent's requests. Accordingly, respondent has the burden of producing information to show that petitioners received income.

There is no evidence in the record that petitioners received the income in question. Indeed, the evidence in the record indicates that the owner of the policy in question was petitioner's former law firm. Petitioner retired from the firm 2 years before the insurance policy lapsed, and neither he nor his wife received any payments from the insurance company. Accordingly, we hold that petitioners are not liable for a

deficiency in income tax as determined by respondent for the taxable year 2003.

To reflect the foregoing,

Decision will be entered

for petitioners.